**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 23-50881 |
| Katie Marie Marcucci | : | Chapter 7 |
| | : | |
| Debtor. | : | Judge Mina Nami Khorrami |

**TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF**
**HOMESTEAD EXEMPTION IN REAL PROPERTY**
**LOCATED AT 1722 HAWTHORNE PARKWAY, GROVE CITY, OH 43123**

James A. Coutinho, the chapter 7 trustee (the "Trustee") over the bankruptcy estate of Katie Marie Marcucci (the "Debtor") objects to the Debtor's claim of the homestead exemption the premises at 1722 Hawthorne Parkway, Grove City, Ohio 43123 (the "Real Estate"). Based on the separation agreement between the Debtor and her former spouse, the Real Estate is owned entirely by the Debtor's former spouse and the only asset of the Debtor related to the Real Estate is a monetary claim arising out of the separation agreement to be paid when the Real Estate sells. Thus, the Debtor does not have an exemptible interest in the Real Estate, and the monetary claim is not subject to the homestead exemption.

A memorandum in support follows.

Respectfully submitted,

/s/ James A. Coutinho
James A. Coutinho     (0082430)
Andrew D. Rebholz     (0102192)
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215
T: (614) 221-8500; F: (614) 221-5988
coutinho@asnalaw.com; rebholz@asnalaw.com
*Counsel to the Chapter 7 Trustee*

**MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

The Debtor filed a voluntary petition for chapter 7 relief on March 20, 2023. Prior to the filing, the Debtor's marriage had been dissolved in the Franklin County Court of Common Pleas, Division of Domestic Relations, Case No. 22 DR 1885 (the "Dissolution Case"). During the Dissolution Case, the Debtor entered into a *Separation Agreement* with her then-husband, Gabriele G. Marcucci (the "ex-Husband"). A copy of the Separation Agreement dated July 26, 2022, is attached as Exhibit A. The Separation Agreement bound the Debtor and her ex-Husband as to the division of various assets in their marital estate. The Separation Agreement was eventually incorporated into a final decree of dissolution of the marriage and is a binding agreement as between the Debtor and her ex-Husband.

One of the marital assets was the Real Estate, which apparently had been the marital residence. The Separation Agreement contains the following language related to the Real Estate, which language is central to the matter before this Court:

> 3.     DIVISION OF PROPERTY
> …
> (E)     REAL ESTATE
>
> The Parties are the owners of the marital residence located at 1722 Hawthorne Parkway, Grove City, OH 43123 and Husband is the sole obligee on the first and second mortgages on the property, Pennymac and Kemba Financial Credit Union, respectively. The parties agree that **Husband shall retain sole and exclusive ownership, use and possession of this real estate**, and hold harmless Husband [*sic*] from all liability thereof; and be responsible for payment of all debt, property taxes, insurance and maintenance thereof. The parties have determined, and agree, that the current equity in the property (at time of Separation) is $66,135.00. **The parties further agree that if or when the property is sold, Wife shall receive one half (1/2) of that determined equity portion, or $33,067.50 at such time of sale.**

Separation Agreement, p 4 (emphasis added).

By the terms of the Separation Agreement, the ex-Husband would "retain sole and exclusive ownership, use and possession of" the Real Estate. Separation Agreement § 3(E). Along with ownership over the Real Estate, the Husband would also be the one responsible for payment of "all debt, property taxes, insurance and maintenance thereof." *Id*. However, the Debtor and her ex-Husband recognized at the time of the marriage dissolution that there was equity in the Real Estate that was awarded to the ex-Husband. Therefore, the Separation Agreement states that there was $66,135.00 in equity at the time of the dissolution, and that "if or when the property is sold" the Debtor would receive payment of $33,067.50 from the ex-Husband, which is equal to half of the equity of the Real Estate at the time of the Separation Agreement (the "Monetary Claim"). *Id.*

The Debtor was required under the terms of the Separation Agreement to execute a deed to transfer the ownership of the Real Estate to her ex-Husband within 90 days of the Separation Agreement's execution, that deadline being October 24, 2022. The Separation Agreement goes on to say that "[u]pon the failure of either party to execute and deliver any such deed, mortgage, promissory note, title, bill of sale, endorsement, form, conveyance, or other document to the other party within ninety (90) calendar days of the effective date of this Agreement, this Agreement shall constitute and operate as such property executed document." Separation Agreement § 17. The Separation Agreement then says that a certified copy of it can be recorded to effectuate such act or transfer. *Id. See also* Rule 70 of the Ohio Rules of Civil Procedure. Based on the public records with the Franklin County, Ohio, Recorder's office, no deed was ever recorded from the Debtor to the ex-Husband for the Real Estate. If a deed was not delivered to the ex-Husband, then on October 25, 2022, the Separation Agreement automatically became the effective transfer document, and that was the date of the transfer of the Real Estate to the ex-Husband.

Despite the Separation Agreement requiring her to execute a deed for her interest in the Real Estate to her ex-Husband, and despite the Separation Agreement automatically operating as a transferring instrument on the 91st day after its execution, the Debtor included the Real Estate on Schedule A/B of her Schedules of Assets and Liabilities when she filed this case in March 2023. *See* Doc. 1, p. 10. She indicated that the Real Estate had a $234,000.00 value, that her interest was a "Joint interest with Separated Spouse" and that the "Spouse is to assume and maintain Mortgage." *Id.* No reference was made to the Separation Agreement, and the Debtor did not otherwise disclose in her initial filing that her interest relative to the Real Estate was merely payment of the Monetary Claim upon the sale of the Real Estate. *See Id*. Moreover, the Debtor did not claim an exemption in the Real Estate with her initial filing. *See* Schedule C, *Id.* at p. 16.

Upon conducting his own investigation of the value and extent of the Debtor's bankruptcy estate, the Trustee examined the Separation Agreement and, specifically based on § 3(E) as quoted above, concluded that the Debtor had no legal or equitable interest in the Real Estate, but rather that the Separation Agreement left the Debtor with the Monetary Claim against the ex-Husband payment of which was conditioned on the sale of the Real Estate.

When the Trustee stated his position to the Debtor, the Debtor proceeded to file an amendment to her Schedule C on July 11, 2023 (Doc. 18). In her amended Schedule C, the Debtor claimed the homestead exemption in the Real Estate pursuant to R.C. § 2329.66(A)(1) and in the total amount of $161,375.00.[1] Based on the Trustee's discussion with the Debtor's counsel, it appears that the Debtor's position is that she retains an interest in the Real Estate itself that is subject to the homestead exemption purportedly because the Debtor's dependents (her children) live at the Real Estate. The Debtor appears to contend that the homestead exemption will exempt

---

[1] In accordance with Rule 4003(b), this filing is being timely made within 30 days of the amended schedule C which lists out for the first time the Debtor's claim of the homestead exemption.

4

the Monetary Claim, and that there is no distinction (as the Trustee believes) between ownership of the Real Estate and the Monetary Claim. To be sure, the Debtor has not amended her schedules to separate the Monetary Claim from the Real Estate, and her schedules continue to assert that she has a joint interest in the Real Estate despite the clear language of the Separation Agreement.

From the Trustee's perspective, as of the Petition Date of this case there are two distinct assets at play: the Real Estate awarded to the ex-Husband that is solely his property; and the Monetary Claim held by the Debtor arising out of the Separation Agreement to be paid if and when the ex-Husband sells the Real Estate. The Debtor may not claim a homestead exemption in either asset as, with respect to the former, she had no interest in it when she filed this case, and relative to the latter, the Monetary Claim arising under the Separation Agreement is not subject to a claim of the homestead exemption because it is not an interest in the Real Estate.

## II.    ARGUMENT

### A.    The Debtor does not own an interest in the Real Estate

Under the Bankruptcy Code, and based on the Separation Agreement, the Real Estate itself is not property of the bankruptcy estate. Rather, the asset of the Debtor under the Separation Agreement is the Monetary Claim, a contractual right to payment from the ex-Husband that is triggered upon the sale of the Real Estate. "Property of the estate" is a broadly defined term, 11 U.S.C. § 541(a)(1), including any interest, whether legal or equitable, held by a debtor in property of any kind as of the petition date.[2] But despite that broad definition, only a debtor's interests are included in the estate, meaning that third-party interests are excluded. *In re Smith*, 310 B.R. 320, 322 (Bankr. N.D. Ohio 2004). This is clearly stated under § 541(d):

---

[2] This Court has the jurisdiction and ability to determine what is property of the estate. *See, e.g, Hafen v. Adams (In re Hafen)*, 616 B.R. 570 (10th Cir. BAP 2020) (citing cases and stating: "In keeping with 28 U.S.C. § 1334(e), nearly all courts that have considered the question have concluded that the jurisdiction to determine what qualifies as estate property lies exclusively with the bankruptcy court.")

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest…becomes property of the estate…only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d). This means that where a debtor holds only bare legal title to property, without any equitable interest, the estate will then only acquire bare legal title without any equitable interest upon the initiation of bankruptcy. *Gilbert v. Palmer Manufacturing and Supply, Inc. (In re Winkle)*, 128 B.R. 529, 533 (Bankr. S.D. Ohio 1991) ("Section 541(d) 'reiterates the general principle that where the debtor holds bare legal title without any equitable interest, the estate acquires bare legal title without any equitable interest in the property.' … In other words, '[t]o the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate.' " (quoting Congressional Record on the adoption of the Bankruptcy Code, 124 Cong.Rec. S17, 413 (Oct. 6, 1978))). *See also Bush Gardens, Inc. v. U.S.*, 10 B.R. 506 (Bankr. D.N.J. 1979).

As for what qualifies as an "interest", the Supreme Court has noted that, although federal law defines what is property of the bankruptcy estate, it is state law that "creates and defines" what property interests are actually in play. *In re Walton* at *2, *citing Butner v. U.S.*, 440 U.S. 48, 55 (1979). Thus, this Court must apply Ohio law when determining the property rights at play here; those being the rights established between the Debtor and her ex-Husband through the Separation Agreement. The Sixth Circuit has further opined that the reference to state law is especially needed with domestic relations cases, and that it is appropriate for bankruptcy courts to "avoid intrusions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.' " *In re Appalachian Basin Cap. LLC*, 2022 WL 2111815, at *3 (Bankr. N.D. Ohio June 9, 2022), *citing White v. White (In re White)*, 851 F.2d 170, 173 (6th Cir. 1988). Thus, when a state domestic court accepts and incorporates a separation agreement into a dissolution decree, bankruptcy courts should respect

Ohio law and the nature of that agreement as a contract binding the respective parties. *See Quesinberry v. Quesinberry*, 185 N.E.3d 1163, 1172, 2022-Ohio-635, ¶ 17 (Ohio App 2nd Dist.) (*citing Morris v. Morris*, 148 Ohio St.3d 138, 142, 2016-Ohio-5002, ¶ 18, for the proposition that, once approved by a trial court and incorporated into a dissolution decree, the parties separation agreement becomes a legally binding contract.); *Bursley v. Bursley*, 2019-Ohio-1556, ¶ 17 (Ohio App. 6th Dist.).

In this case, then, the Debtor's interest in the Real Estate starts and ends with the Separation Agreement. And based on the Separation Agreement, it is the ex-Husband who "shall retain sole and exclusive ownership, use and possession" of the Real Estate. Separation Agreement § 3(E). Of course, it was expected at the time of the marriage dissolution that the Debtor would Deed her interest in the Real Estate to her ex-Husband after completion of the dissolution. *Id*. at § 17. In fact, the Domestic Court ordered it. *Id.* ("Each party **shall execute any and all deeds**…which may be required or necessary to carry out and effectuate any and all of the purposed and provisions herein set forth" (emphasis added)). But the Debtor and her ex-Husband also agreed on a contingency: if the Debtor didn't deliver a deed for her then interest in the Real Estate within 90 days of the execution of the Separation Agreement, then the Separation Agreement itself would "constitute and operate as such properly executed document." *Id.* Notably, there is no trigger to the Separation Agreement becoming an operative document other than the passage of time. The ex-Husband was not required to make a demand upon the Debtor or take any other action. Rather, the Separation Agreement says that, automatically on the 91st day it acts as a deed from the Debtor. In fact, the ex-Husband could take and record the Separation Agreement to document the transfer of the Real Estate. *See Id.* ("The County Auditor, County Recorder, and other public and private

officials are authorized and directed to accept this Agreement, or a certified copy hereof, in lieu of the document regularly required for the conveyance or transfer pursuant to Civil Rule 70.").[3]

Thus, based on the terms of the Separation Agreement, the Debtor relinquished **all** ownership to the Real Estate. Further, based on the passage of time and the language of the Separation Agreement, the Separation Agreement itself acts as an instrument of conveyance transferring the Debtor's then interest in the Real Estate to the ex-Husband prior to the petition date. It does not matter that the ex-Husband did not record the Separation Agreement as he was permitted to do. Under Ohio law, "a deed does not have to be recorded to pass title. Whether or not recorded, a deed in Ohio passes title upon its proper execution and delivery, so far as the grantor is able to convey it." *Wayne Bldg. & Loan of Wooster v. Yarborough*, 11 Ohio St.2d 195, 212 (1967). The fact that records of the local county officials still reflect the Debtor in title is of no import; the Debtor only holds bare legal title, which is not sufficient to create an actual property interest under 11 U.S.C. § 541.

The recent case of *In re Olson*, 2023 WL 3794802, at *2 (Bankr. D. Idaho June 2, 2023) is remarkably instructive. In that case, the decree of divorce set out that certain real property would be awarded to the ex-wife, although there was also one condition where, if she were ever delinquent on the property's mortgage payments, the property would be surrendered to the ex-husband. *In re Olson* at *1. The ex-wife was never delinquent on these payments, but the ex-

---

[3] Rule 70 of the Ohio Rules of Civil Procedure provides as follows: "If a judgment directs a party to execute a conveyance of land, to transfer title or possession of personal property, to deliver deeds or other documents, or to perform any other specific act, and the party fails to comply within the time specified, the court may, where necessary, direct the act to be done at the cost of the disobedient party by some other person appointed by the court, and the act when so done has like effect as if done by the party. On application of the party entitled to performance, the clerk shall issue a writ of attachment against the property of the disobedient party to compel obedience to the judgment. The court may also in proper cases adjudge the party in contempt. If real or personal property is within this state, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others, and such judgment has the effect of a conveyance executed in due form of law. When any order or judgment is for the delivery of possession, the party in whose favor it is entered is entitled to a writ of execution upon application to the clerk."

husband, upon filing a chapter 7 proceeding, listed the real property on his Schedule A/B and claimed it as exempt on his Schedule C. *Id*. The Bankruptcy Court for the District of Idaho, considering the extent of the debtor's estate, turned to state law and found that Idaho gave state courts the power to divide community property between spouses upon termination of the marriage. *Id*. at *2. The court concluded that the divorce decree had altered the rights of the ex-spouses so that the husband-debtor would only have legal and equitable interests in the real property upon satisfaction of the contingency. *Id*. However, that contingency—default by the ex-wife—never occurred. *Id*. Because of this, under § 541(d), the husband-debtor could not claim any interest in the real estate and the property would not be considered part of the bankruptcy estate. *Id*. at *3.

Similarly, in the case at hand, the Separation Agreement altered the rights of the Debtor and her ex-Husband, such that the Debtor had no equitable title to the Real Estate, and only holds empty and bare legal title. The Debtor owns no real property at all.

B.      **The asset of the bankruptcy estate is the Monetary Claim, which is not an interest in real property.**

Turning then to the asset that *is* owned by the Debtor: the Separation Agreement provides that if the Real Estate is sold, the ex-Husband must pay the Debtor the sum of $33,067.50. That is far from an interest in ownership of the Real Estate itself. Rather, it is a right that the Debtor may be able to act upon one day, but that right does not arise to an interest in real property and never will. *See Morris*, 148 Ohio St.3d at 143 (stating the proposition that, once incorporated into a dissolution decree, the separation agreement becomes a binding contract between the parties).

Of course, payment of the Monetary Claim comes with a catch: the Real Estate must be sold before the ex-Husband is obligated to make the payment. But the contingency linking payment of the Monetary Claim to the ex-Husbands's sale of the Real Estate does not equate to an interest of the Debtor in the Real Estate. The sale contingency here could never grant the Debtor an

ownership interest in the Real Estate itself. Instead, the Monetary Claim in the Separation Agreement is for a static value, payable "if or when the property is sold". Separation Agreement § 3(E). Even with her name on the deed, the Debtor couldn't transfer an interest in the Real Estate if she tried. Further, there is nothing in the Separation Agreement that indicates the Debtor needs to approve the sale (i.e. signing a deed), or that would give the Debtor any right in the Real Estate if the sale never occurs. If the ex-Husband does not pay the Debtor upon sale of the Real Estate, the Debtor's *only* recourse is to seek to enforce the terms of the Separation Agreement before the Domestic Court in a contempt action. *Harris v. Harris*, 58 Ohio St.2d 303, 309, 390 N.E.2d 789, 793 (1979); *Liggett v. Liggett*, 2022-Ohio-4700, ¶ 6 (1st Dist.) ("Generally, the trial court enforces the provisions of a separation agreement incorporated into a divorce decree through a contempt action."); *Miller v. Miller*, 2020-Ohio-5262, ¶ 7 (8th Dist.). The Monetary Claim is a hallmark contractual obligation arising out of the Separation Agreement, not an interest in real property.

Based on the foregoing, it is appropriate for the Court to enter an order determining that the Monetary Claim is property of the bankruptcy estate, but that the Real Estate itself is not.

**C.      The Monetary Claim cannot be the subject of a homestead exemption.**

Because, as stated above, the Monetary Claim is an asset of the bankruptcy estate which is separate and distinct from the Real Estate, and creates no interest therein of the Debtor, the Trustee objects to the Debtor's claim of the homestead exemption to the extent that the Debtor seeks to exempt any portion of the Monetary Claim. Because the Debtor only holds the Monetary Claim under the Separation Agreement—as opposed to an actual ownership interest in the Real Estate— the homestead exemption is inapplicable in this case.

To claim Ohio's homestead exemption, a debtor needs to demonstrate that she has an interest in real property, and that the debtor or a dependent uses that real property as a residence.

10

*In re Montgomery*, 602 B.R. 353, 356 (S.D. Ohio 2019), *citing* R.C. 2329.66(A)(1)(b). Further, "[a] debtor cannot claim title to a greater interest than that awarded to [her] in a pre-petition divorce decree." *In re Gomez*, 206 B.R. 663, 666 (Bankr. E.D.N.Y. 1997).

The Separation Agreement gave the ex-Husband "sole and exclusive ownership, use and possession" of the Real Estate. Separation Agreement § 3(E). Under the Separation Agreement, the Husband alone has the ability to sell or transfer the Real Estate; the Debtor has no right to transfer, convey, or sell the Real Estate. The fact that she has bare legal title (i.e. there has yet been no document recorded notating that the Real Estate transferred under the Separation Agreement) does not alter the fact that she no longer has an interest in the Real Estate, and it certainly does not change the character of the Monetary Claim (which is little more than a contingent right arising out of the Separation Agreement).

Because the Debtor's interest in the Monetary Claim does not arise to an interest in real property, the Debtor cannot claim the homestead exemption in the Monetary Claim. Relative to the Real Estate, all the Debtor holds under the Separation Agreement is the Monetary Claim, not an interest in the Real Estate.

## III.   CONCLUSION

Ohio law requires domestic courts to divide all property when completing a dissolution, and the parties to such a dissolution are bound by the final decree. *Morris*, 148 Ohio St.3d at 142. Here, the Debtor negotiated an agreement with her ex-Husband giving him exclusive ownership of the Real Estate, leaving the Debtor with nothing but a contingent right against the ex-Husband for payment of a sum certain in the future. Inaccurate scheduling of the extent and nature of that asset does not permit the Debtor to apply exemptions that are simply inapplicable. The Court

should enter an order finding that the Debtor cannot claim the homestead exemption in the

Monetary Claim, and granting such other relief as is appropriate.

Respectfully submitted,

 /s/ James A. Coutinho
James A. Coutinho      (0082430)
Andrew D. Rebholz    (0102192)
Allen Stovall Neuman & Ashton LLP
10 West Broad Street, Suite 2400
Columbus, OH 43215
T: (614) 221-8500; F: (614) 221-5988
coutinho@asnalaw.com; rebholz@asnalaw.com
*Counsel to the Chapter 7 Trustee*

12

**IN THE COURT OF COMMON PLEAS, FRANKLIN COUNTY, OHIO
DIVISION OF DOMESTIC RELATIONS**

Gabriele G. Marcucci
     Petioner-Husband             :      **CASE NO.: 22DR-06-1885**

     and                     :      **JUDGE: HAWKINS**

Katie M. Marcucci             :      **MAGISTRATE: ELLIOTT**
     Petitioner-Husband

### AMENDED SEPARATION AGREEMENT

This Separation Agreement is made between Gabriele G. Marcucci, presently living at 1722 Hawthorne Parkway, Grove City, Ohio 43123, (hereinafter referred to as "Husband"), and Katie M. Marcucci, presently living at 1988 Plains Blvd, Powell, Ohio 43065 (hereinafter referred to as "Wife"). It modifies and takes the place of any and all prior Separation Agreements between the parties. It is effective on the date last signed by a party.

### RECITALS

**WHEREAS,** the parties stipulate and declare that they were married on    , in the City of    , State of Ohio and have since continued to be husband and wife; that they have the following children, to wit: Ameilia Marcucci, born 10/17/2014, Achilles Marcucci, born 5/12/2017, Atlas Marcucci, born 2/25/2019, and Aris Marcucci, born 5/25/2020, of whom are the issue of this marriage.

**WHEREAS,** as a result of disputes and irreconcilable differences, the parties have separated and are now living separate and apart, and intend to continue to live apart.

**WHEREAS,** the parties are desirous of, and by this Agreement, do settle all their financial, property, support, and the rights and obligations with respect to each other; and

**WHEREAS,** both parties understand that the dissolution of marriage is not an adversary

5

proceeding in that neither party is suing the other party, but by their own agreement, desire to terminate their marriage and make provisions for that termination; and

**NOW, THEREFORE,** in view of the foregoing and in consideration of the mutual promises and undertakings hereinafter set forth, and for good and valuable consideration, the parties agree as follows:

1.     **SEPARATION; FREEDOM OF ACTION; NONINTERFERENCE**

The parties may and shall continue to live apart. Each shall be free from interference, authority or control by the other, direct or indirect, as fully as though unmarried. Neither party shall molest or interfere with the other. Each party may, for his or her separate benefit, engage in any employment, business or profession that he or she may choose.

2.     **EFFECT OF RECONCILIATION**

If the parties reconcile after the date of the execution of this Agreement, this Agreement shall nevertheless continue in full force until it is modified or abrogated by another written instrument to that effect signed by each of the parties.

3.     **DIVISION OF PROPERTY**

**(A) PERSONAL PROPERTY** Except as otherwise expressly agreed in writing, and signed by both parties, Husband and Wife have divided, to their mutual satisfaction, all household goods, tools, equipment and business property, furniture, furnishings, appliances, fixtures, books, items of art, linens, silverware, dishes, household tools, items of personal property and all other such personal property, tangible or intangible, acquired before the marriage, during the marriage, and during any period of separation. Except as otherwise provided herein, such property shall be, and remain, the sole property of the one in whose possession or name it is in free and clear of any claim on the part of the other. Further, any final

personal property that Wife makes claim of shall be retrieved by Wife within 30 days of the date of Decree or shall be considered forfeited.

**(B) <u>MOTOR VEHICLES</u>**   Wife shall retain exclusive ownership, possession, use, and all rights and obligations pertaining to the vehicle in her possession, a 2017 Honda Pilot, free from any interference, claim or interest of the Husband, and shall pay and hold Husband harmless as follows: one-half (1/2) of the monthly car loan payment, or $241/mo., to Honda Federal Credit Union for a period of two (2) years, at which time she will either refinance the car loan, or otherwise be  responsible for full payments and the full payoff on any outstanding balance of loan.  Husband shall retain exclusive ownership, possession, use and all rights and obligations pertaining to the 2014 Honda Odyssey, and hold wife harmless from any liability thereof.

**(C)    <u>ASSETS</u>**

**(1) <u>Life Insurance</u>**

Each party shall retain as his or her sole property any life insurance policies owned in his or her name, free and clear of any claims or interest of the other party.  Each party is free to designate who they wish as the beneficiary of any such policy's death benefits.

**(2) <u>Investments.</u>**   Neither party possesses any investments outside of retirement plans at the time of this agreement.

**(3) <u>Bank Accounts</u>**.  The parties agree that each party shall retain as his or her property, any account in his or her name, free and clear of any interest of the other party. Any joint accounts shall be closed and the proceeds or liability divided between the parties.

**(D)    <u>RETIREMENT ACCOUNTS</u>**   The parties are the owners of three (3) Fidelity IRA accounts one of which is in Husband's name, and two (2) of which are in Wife's

name. Parties agree that each shall retain exclusive 100% interest in the IRA accounts in his or her name, free of any interference from the other. The parties further agree Husband shall be solely entitled to and shall exclusively retain one hundred percent (100%) of Husband's employer retirement portfolio with JP Morgan Chase.

### (E)    REAL ESTATE

The Parties are the owners of the marital residence located at 1722 Hawthorne Parkway, Grove City, OH 43123 and Husband is the sole obligee on the first and second mortgages on the property, Pennymac and Kemba Financial Credit Union, respectively. The parties agree that Husband shall retain sole and exclusive ownership, use and possession of this real estate, and hold harmless Husband from all liability thereof; and be responsible for payment of all debt, property taxes, insurance and maintenance thereof. The parties have determined, and agree, that the current equity in the property (at time of Separation) is $66,135.00. The parties further agree that if or when the property is sold, Wife shall receive one half (1/2) of that determined equity portion, or $33,067.50 at such time of sale.

### 4.    DEBTS & EXPENSES

The marital debts have been divided to the mutual satisfaction of both parties. Except as otherwise may be stated, each party agrees that any individual debt incurred in his or her own name shall be the sole responsibility of that party. Each party agrees to hold the other party harmless on any liability thereon, and any future debt incurred in either party's name. The parties further agree to each be responsible as follows:

Wife shall be responsible for her portion of the cellular phone bill which currently equals $65.00 per month. After two years Wife shall obtain her own, separate cellular phone account and hold husband harmless thereof.

8

The parties agree that each party shall be responsible for any credit card account liability in their individual name, and hold harmless the other, except as follows: As regards the Discover Card ending in 5843, Husband shall initially assume and be responsible for this credit credit card debt, and hold Wife harmless, except that beginning 24 months after the date of dissolution decree Wife shall begin paying $200 per month towards this Discover Card account, which current balance is approx. $17,000. Effective immediately no further charges are permitted on this credit card/account.

5.    **SPOUSAL SUPPORT**

The parties each agree that Husband shall pay to Wife spousal support as follows: $1000.00 per month for a period of 72 months. The parties further agree that should Husband lose his current job/employment, he will make a good faith effort to obtain new employment at similar/comparable pay; if such new employment is markedly less than enumeration, then a modification of spousal support may be made based upon all economic factors at that time. This Court shall retain jurisdiction regarding this matter.

The parties also agree that Wife shall receive from Husband one half (1/2) of Husband's annual bonus at JP Morgan Chase paid to Husband each January/February for the years 2023 and 2024.

The parties agree that Husband shall retain Wife on his employer's health insurance policy as long as is permissible under company policy and/or insurance regulations, or until such time as Wife obtains her own medical/health insurance.

6.    **WAIVER OF VALUATION**

Notwithstanding that the parties have been advised of their right to have each item of property valued for the purpose of equal distribution, each of them hereby expressly waive

9

such valuation and written findings of fact and agree that the distribution of property, as hereinafter awarded while not precisely equal is, in fact, equitable and to the mutual satisfaction of each of them.

7.    **TAX**

The parties agree that if there is any tax liability determined to result from their joint income tax filings during the marital years as determined by any audit by the State or Federal Government, the parties shall be jointly liable for any deficiency, in proportion to their respective incomes as reflected on said year's income tax return. In the same light, if there is any surplus determined during the marital years, the parties agree to divide any refund in proportion to their incomes for said tax year. However, if a deficiency results from one party purposefully not reporting or under-reporting his or her taxable income, that party shall be solely liable for that deficiency, and shall indemnify and hold the other party harmless thereon.

8.    **MUTUAL RELEASE**

Except as otherwise herein expressly provided, the parties shall and do mutually release and forever discharge each other from any and all actions, suits, debts, claims, demands and obligations whatsoever, both in law and in equity, which either of them ever had, now have, or may hereafter have or assert against the other upon or by reason of any matter, cause, or thing up to the date of the execution of this Agreement.

9.    **WAIVER AND MODIFICATION**

No modification or waiver of any of the terms hereof shall be valid unless in writing and signed by both parties. No waiver of any breach hereof or default hereunder shall be deemed a waiver or any subsequent breach or default of the same or similar nature.

10.    **EXECUTION OF ADDITIONAL INSTRUMENTS**

Each party shall, at any time and from time-to-time hereafter, take any and all steps

and execute, acknowledge, and deliver to the other party any and all further instruments and assurances that the other party may reasonably request for the purpose of giving full force and effect to the provisions of this Agreement.

## 11.    **PARTIAL INVALIDITY**

If any provision of this Agreement is held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect.

## 12.    **PRESENTMENT TO COURT**

If a divorce is presently pending, or if one or both of the parties hereto hereafter files an action for divorce or dissolution of marriage, the parties agree that this entire Agreement shall be disclosed and presented to the Court in such proceeding, with the request that if it be adjudicated to be fair, just and proper, this Agreement and all its terms and provisions shall then be adopted by said Court, embodied in, and made a part of, the Order of said Court in the final judgment entered in such proceeding.  However, if a Petition for Dissolution of Marriage is hereafter filed by the parties, with a copy of this Agreement attached thereto, and if one or both of the parties refuse to proceed to the Entry of a judgment of dissolution of marriage, it is the express understanding, intent and agreement of the parties that this Agreement shall be fully binding and effective, as if the Entry of a judgment of dissolution of marriage had been made subject only to the provision that if an action for divorce is thereafter filed, that if the Court, as hereinabove provided, adjudicates this Agreement to be fair, just and proper, then said Agreement and all its terms and provisions be adopted by the Court, embodied in and made a part of, the Order of said Court in the final judgment entered in such proceeding.

11

13.     **ACKNOWLEDGMENT OF NO OUTSTANDING DEBTS**

Each party represents and warrants that except as herein stated, he or she has not incurred any debt or made any commitment for which the other or the other's estate may be liable, and neither party shall at any time hereafter incur any such debt or make any such commitment.

14.     **SURVIVAL OF OBLIGATION; MUTUAL RELEASE**

Except as otherwise provided herein, the obligation of the parties herein to make mortgage payments, make child support, and make property division shall not terminate upon the death of the spouse that has agreed to perform such acts under this Agreement and shall be a charge against such spouse's estate, shall be binding upon such spouse's heirs or executors/administrators, and shall be paid or conveyed to the other spouse as required herein.

Except as herein otherwise provided, each party hereto additionally, completely and forever releases the other party from any and all rights each has, or may have:

(a)     To division of property in the estate of the other;

(b)     To dower in the estate of the other, past, present, or future, including but not limited to, real estate acquired subsequent to this Agreement;

(c)     To act as administrator or executor in the estate of the other;

(d)     As legatee or devisee in the Last Will and Testament of the other, executed prior to the date hereof;

(e)     To any statutory distributive share in the estate of the other;

(f)     As a beneficiary of any life insurance, or other type of insurance policy of the other, issued prior to the date hereof;

(g)     To statutory exemptions, statutory mansion house rights, and statutory

12

year's allowance in the estate of the other; and to any other property, privileges, or benefits accruing to the other by virtue of the marriage, or accruing to either from any other source, act, matter, or agreement whatsoever, whether the foregoing are conferred by the statutory or common law of any state, or the United States of America, or of any other country, except as may be otherwise provided in this Agreement; and

(h)     To rights, claims, demands, or causes of action that each may now have arising out of their marriage, or from any other act, agreement, or cause whatsoever occurring prior to the date of this Agreement.

## 15.     EFFECTIVE DATE

The effective date of this Agreement shall be the date of the Agreement is executed by the Husband or the Wife, whichever date occurs last.

## 16.     APPLICABLE LAW

This Agreement shall be construed and governed by the laws of the State of Ohio.

## 17.     PERFORMANCE OF NECESSARY ACTS

Each party shall execute any and all deeds, mortgages, promissory notes, titles, bills of sale, endorsements, forms, conveyances, or other documents, and perform any act which may be required or necessary to carry out and effectuate any and all of the purposes and provisions herein set forth. Upon the failure of either party to execute and deliver any such deed, mortgage, promissory note, title, bill of sale, endorsement, form, conveyance, or other document to the other party within ninety (90) calendar days of the effective date of this Agreement, this Agreement shall constitute and operate as such properly executed document. The County Auditor, County Recorder, and other public and private officials are authorized and directed to accept this Agreement, or a certified copy hereof, in lieu of the document regularly required for

13

the conveyance or transfer pursuant to Civil Rule 70.

18.   **ENFORCEMENT EXPENSES**

If either the Husband or the Wife defaults in the performance of any of the obligations herein set forth, and it becomes necessary to institute legal proceedings to effectuate performance of any provisions of this Agreement, then, in such case, the party found to be in default shall pay all expenses, including reasonable attorney fees, incurred in connection with such enforcement proceedings.

19.   **ENTIRE AGREEMENT**

The parties have incorporated herein their entire understanding.   There are no representations, warranties, covenants, or undertakings other than those expressly set forth herein.   No oral statements or prior written matter extrinsic to this Agreement shall have any force or effect.   Each party acknowledges that he or she fully understands the terms hereof, and each acknowledges that he or she is signing this Agreement freely and voluntarily.

20.   **ADVICE OF COUNSEL**

Each party hereby acknowledges that they had the opportunity to consult with and be advised by an attorney concerning this Agreement and any other matters surrounding the demise of their marital relationship.   If either party is not represented by counsel, then both parties will execute an Acknowledgment of Separate Counsel, a copy of which will be attached hereto and incorporated herein by reference.

21.   **DISPOSITION OF ESTATES**

Other than as herein set forth, each party shall at all times be at full liberty to dispose of his or her property, real, personal, or mixed, tangible or intangible, by Last Will and Testament or otherwise, free from any claim, interest, or right in favor of the other.

14

22.    **BINDING ON HEIRS**

Except as otherwise provided herein, each party hereby makes this Agreement binding upon the heirs, estate, executor, and administrators of his or her respective estate and except as otherwise provided herein such obligations created hereunder shall be a charge upon his or her estate.

23.    **PARAGRAPH CAPTIONS**

The paragraph captions in this Agreement have been inserted for convenience and reference only.  Therefore, the captions shall in no way effect, define, limit or describe the scope, intent or construction of any provision in this Agreement.  If any provision of this Agreement is held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect.

24.    **ALLOCATION OF COURT COSTS**

Petitioner-Husband shall be solely responsible for any and all court costs associated with this action.

**IN WITNESS WHEREOF,** the parties have hereunto set their hands and acknowledge this Agreement on the dates indicated.

**SIGNED AND ACKNOWLEDGED
IN THE PRESENCE OF:**

_____
Gabriele G. Marcucci
Date:  07/26/2022

_____
Katie M. Marcucci
Date:  07/26/2022

15

**STATE OF OHIO** )
**COUNTY OF FRANKLIN** ) ss:

    Before me, a Notary Public, in and for said County and State, personally appeared the above-named Gabriele G. Marcucci, who acknowledged that he did sign the foregoing instrument and that the same is his free act and deed.

    **IN TESTIMONY WHEREOF,** I have hereunto set my hand and official seal at

Columbus, Ohio, this 26th day of _____July_____, 2022

RICHARD A. SCHWAGER, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My Commission has no expiration date.
Section 147.03 R.C.

_____
Notary Public

**STATE OF OHIO** )
**COUNTY OF FRANKLIN** ) ss:

    Before me, a Notary Public, in and for said County and State, personally appeared the above-named Katie M. Marcucci, who acknowledged that she did sign the foregoing instrument and that the same is her free act and deed.

    **IN TESTIMONY WHEREOF,** I have hereunto set my hand and official seal at

Columbus, Ohio, this 26th day of _____July_____ 2022.

RICHARD A. SCHWAGER, Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My Commission has no expiration date.
Section 147.03 R.C.

_____
Notary Public

## NOTICE OF TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF HOMESTEAD EXEMPTION IN REAL PROPERTY LOCATED AT 1722 HAWTHORNE PARKWAY, GROVE CITY, OH 43123

The Chapter 7 Trustee has filed papers with the court seeking to have the court determine the nature of an asset of the bankruptcy estate and objecting to the Debtor's claims of a homestead exemption.

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you do not want the court to grant the relief sought in the motion, **then on or before twenty-one (21) days from the date set forth in the certificate of service for the motion,** you or your attorney must file with the court a response explaining your position by mailing your response by regular U.S. Mail to Clerk, United States Bankruptcy Court, 170 North High Street, Columbus, Ohio 43215, OR your attorney must file a response using the court's ECF system.

The court must **receive** your response on or before the above date.

You must also send a copy of your response either by 1) the court's ECF System, or by 2) regular U.S. Mail to:

United States Trustee                    James A. Coutinho, Esq.
170 North High Street, Suite 200         Allen Stovall Neuman & Ashton LLP
Columbus, Ohio 43215                     10 W. Broad St., Ste. 2400
                                         Columbus, OH 43215

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief without further notice or hearing.

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing *Trustee's Objection to Debtor's Claim of Homestead Exemption in Real Property Located at 1722 Hawthorne Parkway, Grove City, OH 43123* was served (i) electronically on the date of filing through the court's ECF System on all ECF participants registered in this case at the email address registered with the court and (ii) will be served by ordinary U.S. Mail on August 7, 2023, addressed to:

Katie Marie Marcucci
1988 Plains Blvd.
Powell, OH 43065

Derek Michael Shaw
513 E. Rich Street Suite 210
Columbus, OH 43215

Office of the U.S. Trustee
170 North High Street, Suite 200
Columbus, OH 43215

/s/ James A. Coutinho
James A. Coutinho     (0082430)

14